O’Neall, J.
In this case, both parties have appealed : and I shall first dispose of the grounds taken for a new trial, on the part of the plaintiff.. Both of them may be considered together.
The legatee in consideration of having boarded with the administrator for two or three years, and of his having charged; her no commissions for his management of the estate, said she would not charge him with interest on her distributive share; and at the time of this conversation, she was of full age.
Interest is allowed, generally, as a matter of course, on the funds,in the hands of an administrator but the parties intitled to the fund may, if they choose, discharge him from the payment of it. In this case, on both a good and valuable consideration, the legatee thought proper to agree, that he should account without interest. This was a good discharge from the payment of it, up to the time when a demand of payment of the principal sum was made. From a demand of payment, I should think interest ought, to be allowed. In this case, no demand of payment is proved, until suit brought, and therefore no interest can be allowed until the commencement of the action.
*483 The defendant appeals on several grounds, of which, it is necessary only to consider two: viz. 1st That the plea, in abatement, of a former suit pending, ought to have been sustained. 2nd. That the defendant’s demurrer, to the replication of the plaintiff to the defendant’s plea of a discharge by the ordinary, ought to have been sustained.
It appears, that a former suit had been brought by the ordinary against this defendant; and at Spring Term, 1829, an order was made, that unless the real plaintiffs, who live, as it is alleged,^without the limits of this State, should give security for costs, on or before a given day between the terms, a nonsuit should be entered. Security was not given, and at October Term, 1829, an order of nonsuit was entered on the docket. An appeal was taken from this order, but was abandoned at Spring Term, 1830. But, in the mean time, this suit was instituted.
The former suit was ended, and judgment of nonsuit might have been entered on the day, on which the time allowed for putting in security for costs, expired. The appeal, from the entry on the docket of the order of nonsuit, could not continue a case as pending, which was already out of Court. In any point of view, however, it could not have the effect to continue the pendency of the suit. If the motion to reverse, the circuit decision, had been granted, the effect of it, it is true, would have been to vacate the order of nonsuit; and the case would have been regarded, as if no such order had ever been made. . But on the motion being refused, the judgment of nonsuit is of the term, at which it was ordered ; and it is the judgment of non-suit, not the dismissal of the appeal in the Court of Appeals, which must be regarded as the legal determination of the suit. An appeal may, or may not, restore a case to its former status : its effect is provisional. Ahd I am, therefore, satisfied, that the plea in abatement was properly overruled.
With regard to the second ground. The defendant pleaded, in bar, that he was discharged by the ordinary. To this the plaintiff replied, that David West, one of the administrators, before the order of discharge was made by the ordinary, at a sale made by the administrators, “bid off, and'retained in his possession goods and effects of the said Osborne West, of the value of $1753; which the said administrators were charged *484 with, and formed the sums decreed against the said David West, and Stephen J. Casey, by the ordinary, on the settlement of the accounts of the said testator, hefore the said ordinary made, on the 3rd February, 1818, and which sums so decreed against the said David West, and Stephen J. Casey, administrators as aforesaid, have never been paid over to the said plaintiff, as ordinary, or the parties legally intitled thereto, according to law.” To this replication, the.defendant demurred : and the plaintiff joined in demurrer. The presiding .Judge overruled the demurrer.
Two questions arise out of these pleadings : — 1st. Is Jhe averment of a purchase by the administrator, at his own sale, previous to the discharge of the defendant, an answer to the plea? 2nd. If not, is it aided by the further averment, that the amount of the purchase constituted the sum, for which the ordinary made his decree against the administrators, subsequently to the substitution of Williams, and the discharge of the defendant ?
1 am satisfied, that the replication of a purchase by the administrator at bis own sale, is no answer to the plea. To be an answer to the plea, the replication ought to have shewn a liability, existing in the administrators, and their sureties, before the order of discharge was made by the ordinary. To say that one of the administrators bought property at his own sale, is not shewiug a liability then existing ; for notwithstanding this purchase, it may be, that the administrators have legally administered the estate of the testator : and that is the extent of the undertaking of the sureties.
An administrator, intitled to a share of an estate, may legally buy to the extent of his interest. The purchase by an administrator, not intitled to a share, is not absolutely void; for it is at the election of the distributees, whether they will confirm, or set it aside. This is the result of previous adjudications on this subject: but it is, I think, questionable, whether the purchase by an administrator, is not always good, where he shews, that he sold fairly, and paid a full and fair price. In other words, if he shews such a case, as would have induced the Court of Equity to authorize him to buy, his purchase ought to be confirmed. A clause in the act of 1745, P. L. 202, which prohibits executors, or administrators, from taking the property of their testator, or intestate, at the appraised value, would seem *485 legislatively to sanction their acquisition of it by purchase. At all events, it cannot be enough to charge an administrator, or his sureties, that lie bought at his own sale : for, for any thing we know, his purchase may have' been less than his share, or it may have been confirmed by the legatees.
I presume the replication here was framed in imitation of the one in Cureton v. Shelton, 3 M’C. 414. On looking into that case, it will be seen, that the replication sets out, that on a bill filed in the Court of Equity, amongst other things, for a general account touching the administration, by R. T. Cates, and Sarah Cates, of the estate of Robert Cates, deceased, the Court ordered a reference, and upon that reference the Commissioner charged and reported against Sarah Cates, and R. T. Cates, administratrix, and administrator, the purchase made by R. T. Cates, and John S. Cates, at the sale of Robert Cates’ estate, which had been set aside, amounting to $2067, &c., which report was confirmed by the Court of Equity, and the said Sarah Cates, and R. T. Cates, ordered to pay to the distributees the amounts to which they were respectively' intitled ; and then avers, that they were intitled to a certain sum each, which had not been paid. This replication, it will be observed, fixes, by a judicial decision, the liability of the first administrators, on account of acts for which their sureties were liable. It was not merely because one of the administrators had bought at his own sale, that this replication was held to avoid the plea of discharge ; but because that sale had been set aside by the judgment of a Court of competent authority, and the administratrix, and administrator, ordered to account, and had accounted for the value of the property so illegally sold, but had failed to pay the amount decreed. In the language of Judge Colcock, “these were liabilities which attached at the time of the discharge.” 3 M’C. 417. But from the replication before us, we cannot say, that the act of the administrator in purchasing at his own sale, was either unlawful, or has worked a devastavit to the prejudice of the legatees. The plaintiff, therefore, was not in-titled to judgment on the demurrer upon this ground.
The second question, arising out of the pleadings, involves an inquiry .into the effect of the ordinary’s discharge, and the liability of the substituted sureties ; and is, by far, the most important question in the case, not only to this defendant, but also *486 to the community at large. The clause of the act of 1789, under which the ordinary exercises the power of discharging sureties, is as follows : “ If the securities for administrators conce’*ve themselves in danger of being injured by such surety-ship, they may petition the Court to whom they stand bound, for relief, which Court shall summon the administrator to appear, and thereupon make such order or decree as shall be sufficient to give relief to the petitioner.” P. L. 494. The ordinary, to whom the bond of an administrator is made payable, can make no order for the discharge of the sureties, which the law does not authorize him to make ; and any order which he may make, will only be effectual to the extent of the authority conferred upon him by the law. And in this case, the order of discharge purports nothingmore than to “ release the said David Trail from his surety-ship, on the said bond, in as full and ample a manner, as, by law, the ordinary could discharge him.” So that the only inquiry necessary to be made as to the defendant’s liability, is, as to what are the liabilities under his bond, from which the ordinary could, by law, discharge him.
The act under which the ordinary is to give relief to the “securities,” clearly contemplates a discharge from a future, and not. from a past liability. If the ordinary, on citing the administrator to appear,- at the instance of his sureties, should merely take, a new bond, with new sureties, from him ; this would not discharge the former sureties from a past liability, although they would not be liable to a future one. It is also, I think, unquestionable, that the new sureties would be liable for any funds which the administrator then had in his bands. Joyner v. Cooper, decided at Charleston, in February last, (ante p. 199.) M’Dowell v. Caldwell, 2 M’C. Ch. 55., and the Treasurers v. Taylor, decided at this term. In such a case, the security would be cumulative ; and the creditors, or distributees, would have the right to recover the fund from the first, as well as the second sureties. In the language of Judge Colcock, in the case of Cureton v. Shelton, “ admitting that the discharge could operate as to future liabilities, it cannot affect those which did exist. There is no power which could release the securities from such.” 3 M’C. 417. If, however, at the time a new bond is given, no liabilities have attached, as where the administrator has legally inventoried and sold the estate, but has not received *487 any of the funds ; then the liability for his failing to account, would be cast on the new sureties alone. If the ordinary, on citing the administrator to account, revokes his letters of administration, and grants administration de bonis non, to the same, or to another administrator ; and the account on the first administration is legally made up, and no other liability under his first administration is afterwards established, by the decree of a Court of competent jurisdiction, as existing before the revocation of the letters of administration : then in the case where the first administrator is appointed administrator de bonis non, the law would transfer the funds in his hands, on his first administration, to his administration de bonis non, and the sureties of his first administration, would be discharged. Simkins v. Cobb, decided in December last, at this place, (ante p. 60.) If another person is appointed administrator de bonis nonj the first administrator must pay over the funds in his hands before his sureties would be discharged.
In this case, it does not appear, that the decree was founded on a liability, which had attached previous to the discharge ; and, if I understand the facts, correctly, as they came out on the trial of the issues submitted to the jury, none had, in truth, attached. The administrators inventoried, and legally sold, the whole estate and before the credit had expired, and before they, had icceived any part of the proceeds of the sale, or any other assets of the estate, this defendant was discharged, and Williams substituted as surety. Up to the time of the defendant’s discharge, then, the administrator had legally administered, and no liability had attached to him. He cannot, therefore, be made liable to paya decree made in 1818, nearly two years after his discharge, which does not purport to charge the administrators for any act of mal-admini» ¡.ration before his discharge.
I am, therefore, of opinion, that the replication is no answer to the plea, upon any ground, and that the demurrer ought to have been sustained. The motion to set aside the verdict, and for leave to enter up judgment for the defendant in the action, the plaintiff in demurrer, is therefore granted.
Harper, J. concurred.
Motion granted.